ULTIMATE CREATIONS, INC.,
et al., Plaintiffs,

v.

Vincent K. McMAHON,
et al., Defendants.

No. CV 06–00535–PHX–ROS.

United States District Court,
D. Arizona.

Sept. 18, 2007.

Daniel D. Maynard, Michael D. Curran, Maynard Cronin Erickson Curran & Sparks PLC, Phoenix, AZ, for Plaintiffs.

John T. Gilbert, Steven Gerald Ford, Alvarez & Gilbert, Phoenix, AZ, Amy L. Barrette, Curtis B. Krasik, Jerry S. McDevitt, Kirkpatrick & Lockhart Nichol-

son Graham LLP, Pittsburgh, PA, for Defendants.

## ORDER

ROSLYN O. SILVER, District Judge.

Pending before the Court is Defendants Vincent McMahon, Linda McMahon, Titan Sports, Inc. and Word Wrestling Entertainment, Inc.'s Motion to Dismiss counts two and three of Plaintiffs Ultimate Creations, Inc., Warrior, and Dana Warrior's First Amended Complaint. For the following reasons, the motion will be granted in part and denied in part.

## I. Background

In 2005, Defendants made and released a DVD titled "The Self–Destruction of the Ultimate Warrior." (Doc. 64) Plaintiff Warrior is a well-known professional wrestler and a former employee of Defendants. Warrior is the subject of Defendants' DVD. (Doc. 64) The DVD chronicles Warrior's professional wrestling career and provides commentary on his life and actions as a professional wrestler. The DVD contains the following statements about Warrior:

a. Vince McMahon came up with the name Ultimate Warrior;

b. If he [Warrior] didn't have someone to lead him, he couldn't have a great match on his own;

c. He never understood how the match went; he was one of those guys, you couldn't tell him [what to do];

d. If someone could come from another planet—it could be Jim [Warrior]—Jim is very different;

e. He was too stupid to know where he was from. No one wanted their town to be associated with him;

f. He couldn't do an interview;

g. The tassels tied to his arms cut off the circulation to his head;

h. He had a lack of in ring ability, did not have athleticism, did not know how to do anything [in the ring], he was dangerous;

i. His in ring skills were limited, at best;

j. Warrior had no idea about wrestling; didn't care about the history of the business;

k. He figuratively put a gun to [Vince McMahon's] head at Summerslam. He was unprofessional and the money was to be paid upfront [before Warrior would perform];

l. Tried to hold [Vince] McMahon up for $500,000 or maybe more;

m. I [Vince McMahon] paid him what I agreed to pay him when obviously I didn't have to, but that's me and I couldn't wait to fire him [Warrior];

n. It was a very unprofessional thing to do, but I [Vince McMahon] forgave him and he came back to work;

o. WWE had a very stringent drug policy and there was a violation [by Warrior] and he was fired for a second time;

p. His view of his character and how he related to that character in real life was problematic;

q. Without a doubt, Jim Hellwig [Warrior] has a problem distinguishing himself from his character;

r. We were worried about Warrior keeping all of his commitments;

s. He missed dates where he was advertised;

t. Jim [Warrior] missed several dates, just refused to show up;

u. You cannot refuse to show up and screw the audience;

v. His father passed away and he used it as an excuse; he had not seen his dad in 10 years and could care less about him;

w. He was unreliable and McMahon states that he terminated Warrior for the third time;

x. No one liked him and no one wanted to work with him;

y. You can't hold people up for money, you can't not keep your commitments;

z. The credo to Warrior University was filled with non-sensical ramblings.

(Doc. 64) On February 9, 2007, Plaintiffs filed their amended complaint, containing defamation and false light claims against Defendants. On February 26, 2007, Defendants filed a Motion to Dismiss.

## II. Standard of Review

To survive a motion to dismiss, Plaintiffs' right to relief must be more than merely conceivable, it must be plausible on its face. *Bell Atlantic Corp. v. Twombly,* — U.S. —, —, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). When evaluating the motion, Plaintiffs' "allegations of material fact are taken as true and construed in the light most favorable to the plaintiff." *SmileCare Dental Group v. Delta Dental Plan of California,* 88 F.3d 780, 782–83 (9th Cir.1996). "However, conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. F.D.I.C.,* 139 F.3d 696, 699 (9th Cir.1998).

## III. Analysis

Defendants motion to dismiss argues a number of grounds for dismissal. First, Defendants seek dismissal of individual Plaintiffs Dana Warrior and Ultimate Creations, Inc. based on the lack of any allegations in the complaint that Defendants made statements regarding these Plaintiffs. Second, Defendants seek dismissal of the individual Defendants Vince and Linda McMahon based on Plaintiffs' failure to allege any facts on which they could be found personally liable. Third, Defendants seek dismissal of Plaintiff Warrior's defamation and false light claims based on the claims failing as a matter of law, the fact that Warrior is a public figure, and the failure to plead special damages. And fourth, Defendants seek dismissal of the false light claim as they claim it is subsumed by the defamation claim.

### A. Plaintiffs Dana Warrior & Ultimate Creations

■ Defendants believe Plaintiffs Ultimate Creations, Inc. and Dana Warrior's defamation claims should be dismissed because the complaint does not allege that any statements were made "of and concerning" these Plaintiffs. Under Arizona law, a statement is defamatory only if it "reasonably relate[s] to specific individuals." *Hansen v. Stoll,* 130 Ariz. 454, 636 P.2d 1236, 1240 (Ariz.App.1981). The amended complaint does not allege that Defendants made defamatory statements "of and concerning" Ultimate Creations, Inc. or Dana Warrior; all of the allegedly defamatory statements are aimed at Plaintiff Warrior. Thus, Plaintiffs Ultimate Creations, Inc. and Dana Warrior's defamation claims will be dismissed.

■ Defendants also argue that Ultimate Creations, Inc. and Dana Warrior's false light claims should be dismissed. Under Arizona law, the tort of false light occurs when "the defendant knowingly or recklessly published false information or innuendo about the plaintiff that a reasonable person would find highly offensive." *Hart v. Seven Resorts Inc.,* 190 Ariz. 272, 947 P.2d 846, 854 (Ariz.App.1997). The complaint does not contain any allegations

that Defendants' statements on the DVD were about Plaintiffs Ultimate Creations, Inc. or Dana Warrior. Therefore, the false light claims asserted by these Plaintiffs must also be dismissed.

### B. Vince and Linda McMahon

■ Defendants argue that Warrior's claims against Vince and Linda McMahon should be dismissed. Defendants claim Warrior failed to allege how Vince and Linda McMahon injured the Plaintiff. A plaintiff is "not require[d] . . . to set out in detail the facts upon which he or she bases a claim." *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir.2001). "All that is required is a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rest." *Id.* Warrior has adequately alleged that Vince and Linda McMahon injured him. Warrior's complaint alleges Defendants, including Vince and Linda McMahon, made, marketed, released, and sold a DVD containing defamatory statements about Warrior. Consequently, Warrior's claims against Vince and Linda McMahon will not be dismissed.

### C. Defamation and False Light

Defendants seek dismissal of Warrior's defamation and false light claims based on three grounds. First, Defendants assert that the statements on the DVD are not defamatory as a matter of law. Second, Defendants argue that Warrior is a public figure and cannot bring a false light claim. And third, Defendants believe Warrior failed to plead special damages.

### 1. Defamatory as a Matter of Law

■ To survive the motion to dismiss his defamation claims, Warrior must establish that the statements "are reasonably capable of sustaining a defamatory mean-

ing," and that the statements "are not mere comment within the ambit of the First Amendment." *Knievel v. ESPN,* 393 F.3d 1068, 1073–74 (9th Cir.2005) (quotations omitted). Defendants believe that Warrior has failed to establish either of these requirements. The Court does not agree.

#### a. Defamatory Meaning

■ "To be defamatory, a publication must be false and must bring the defamed person into disrepute, contempt, or ridicule, or must impeach plaintiff's honesty, integrity, virtue, or reputation." *Godbehere v. Phoenix Newspapers, Inc.,* 162 Ariz. 335, 783 P.2d 781, 787 (1989). Statements of rhetorical hyperbole are not actionable and "[t]he law provides no redress for harsh name-calling." *Flowers v. Carville,* 310 F.3d 1118, 1127 (9th Cir.2002). *See also Turner v. Devlin,* 174 Ariz. 201, 848 P.2d 286, 292–93 (1993) (statements of rhetorical hyperbole are not actionable). To determine whether a statement can be reasonably interpreted as a factual assertion, a court "must examine the totality of the circumstances in which it was made." *Underwager v. Channel 9 Australia,* 69 F.3d 361, 366 (9th Cir.1995).

■ The general context of the DVD is a documentary-style video that chronicles the significant events and actions of Warrior as a professional wrestler in the WWE. Generally, the DVD uses an honest and serious documentary-style approach to analyze Warrior's wrestling career. However, the DVD does contain occasional commentary that sarcastically pokes fun at Warrior's actions and wrestling character.

After examining the totality of the circumstances in which the Defendants' statements were made, the Court finds that Defendants allegedly made statements about Warrior that can be reasonably interpreted as factual assertions that may

have brought him "into disrepute, contempt, or ridicule" or impeached his "honesty, integrity, virtue, or reputation." *Godbehere*, 783 P.2d at 787. Statements k-n and y allege that Warrior would not honor his employment obligations unless he received a $500,000 payment. Statement o alleges that Warrior violated the WWE's drug policy and that the WWE fired him because he violated the drug policy. Statements s-w and y allege that Warrior failed to honor his event obligations and was terminated by the WWE for failing to honor these obligations. These statements are reasonably capable of a defamatory meaning.

### b. First Amendment

To satisfy First Amendment concerns, "[a] public figure plaintiff must show that the defendant acted with actual malice-that is, knowledge that [a statement] was false or reckless disregard of whether it was false or not." *Flowers*, 310 F.3d at 1129. Defendants argue that Warrior's defamation and false light claims should be dismissed because he has failed to adequately plead actual malice. For a defamation claim, "actual malice" is present when a statement is made with the knowledge that a statement is false or with reckless disregard of whether it was false or not. *New York Times v. Sullivan*, 376 U.S. 254, 280, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). For a false light claim, "actual malice" is present when the statement is made with knowledge that the statement creates false innuendo or with reckless disregard of the statement's truth. *Godbehere*, 783 P.2d at 788–89.

During the pleading stage, plaintiffs may generally aver a defendant's state of mind simply by stating that it existed. Fed.R.Civ.P. Rule 9(b); *Flowers*, 310 F.3d at 1130. In *Flowers*, a public figure plaintiff generally averred in her complaint that the defendants made false and defamatory statements with actual malice. *Id.* at 1131. The court held that the plaintiff's complaint sufficiently plead actual malice. *Id.* In this case, the complaint describes the statements that form the basis of the defamation and false light claims and alleges that those statement were made with actual malice. Based on *Flowers*, Warrior has adequately pled actual malice. The First Amendment does not prevent Warrior from pursuing his claims.

### 2. Public Figure

Defendants argue that Warrior can not bring a false light claim because Warrior is a public figure and the statements about Warrior relate only to his public life as a professional wrestler. If a plaintiff is a public figure, he may not bring a false light claim based on statements that relate to his public life or actions as a public figure. *Godbehere*, 783 P.2d at 789–90 ("[T]he right of privacy does not exist where the plaintiff has become a public character.") (quotation omitted). However, a public figure may bring a false light claim for statements that relate to his private life and presents his "private life in a false light." *Id.* at 789. Because of his career as a well-known professional wrestler and performer, Warrior is a public figure. Thus, any statements that relate to Warrior's public life as a professional wrestler are not actionable under Arizona false light law.

Almost all of the statements that form the basis of Warrior's false light claim relate to Warrior's life and actions as a public figure. The title of the DVD and statements a-u and w-z relate to Warrior's public life and actions as a professional wrestler. (Doc. 64) However, statement v ("His father passed away and he used it as an excuse; he had not seen his dad in 10

years and could care less about him.") is an actionable statement under Arizona false light law for Warrior, despite his status as a public figure. Statement v relates to Warrior's private personal life (his relationship with his father), and it can be construed as a statement that presents Warrior's "private life in a false light." *Id.* Warrior's false light claim will not be dismissed.

### 3. Pleading requirements

 Defendants seek dismissal of Warrior's defamation claim based on the alleged failure to plead pecuniary damages. In his response, Warrior argues that the statements in the DVD qualify as "defamatory per se," and pecuniary damages need not be pled. Warrior is correct.

 According to Arizona law, libel and slander are classified as either per se or per quod. *Boswell v. Phoenix Newspapers, Inc.,* 152 Ariz. 1, 730 P.2d 178, 183 n. 4 (Ariz.App.1985). A communication is libel per se if on its face it tends "to impeach one's honesty, integrity, or reputation." *Id.* If a communication "is libelous only by considering extrinsic information, then it is considered libel per quod." *Id.* A communication qualifies as slander per se if it charges "one with a contagious or venereal disease; charge[s] that a woman is not chaste" or consists of statements "which tend to injure a person in his or her profession, trade or business" or imputes "the commission of a crime involving moral turpitude." *Id.* "Slander per quod are all slanderous utterances which are not slanderous per se." *Id.* Libel and slander per quod require a plaintiff plead pecuniary damages, while libel and slander per se do not. At least some of the statements in the DVD qualify as libel or slander per se.

Statements k-n, and y consist of allegations that Warrior demanded a larger payment from Defendants than he had previously negotiated and that Warrior is "very unprofessional." Statements s-w contain allegations that Warrior refused to honor his business commitments. And statement o alleges Warrior violated a stringent drug policy. These statements tend to impeach Warrior's honesty, integrity, and reputation and qualify as either libel or slander per se. *Ilitzky v. Goodman,* 57 Ariz. 216, 112 P.2d 860, 862 (1941). Thus, Warrior was not required to plead pecuniary damages.

### E. Parallel False Light and Defamation Claims

 Defendants argue that Warrior's false light claim should be dismissed because it is subsumed by his defamation claim. If a false light action allows damages for injuries that are distinct from the injuries required to sustain a defamation action, a plaintiff may bring a false light claim based on the same statements that form the basis for her parallel defamation claim. *Flowers v. Carville,* 310 F.3d 1118, 1132 (9th Cir.2002).

In *Flowers,* a plaintiff brought a parallel false light claim for each one of her defamation claims. The plaintiff's claims were based on Nevada law, which requires false light plaintiffs to show injuries that are distinct from the injuries necessary to sustain a defamation claim. *Id.* (quoting *People for the Ethical Treatment of Animals v. Bobby Berosini, Ltd.,* 111 Nev. 615, 895 P.2d 1269, 1274 n. 4 (1995)). Under Nevada law, a defamation plaintiff must show that a publication has injured her reputation but a false light plaintiff must show that a publication has caused her emotional harm. *Id.* Based on this difference, a plaintiff's false light claim is not subsumed by her parallel defamation claim because the injuries necessary to sustain a false

light claim are distinct from the injuries necessary to sustain a defamation claim.

■ Like Nevada, Arizona law allows false light plaintiffs to recover damages for injuries that are distinct from the injuries necessary to sustain a parallel defamation claim. *Godbehere*, 783 P.2d at 787. In Arizona, a defamation plaintiff is required to show harm to his reputation while a false light plaintiff is required to show that a publication has caused him emotional harm. *Id.* Because Arizona law allows a false light plaintiff to recover for injuries that are distinct from the injuries required to sustain a parallel defamation claim, the Plaintiff's false light claim is not subsumed by his parallel defamation claim. *Flowers*, 310 F.3d at 1132.

Accordingly,

**IT IS ORDERED** that The Defendants' Motion to Dismiss (Doc. # 68) is **GRANTED** in part and **DENIED** in part.